### COOPER v. LAWRENCE.

#### (Supreme Court, Appellate Term. May 15, 1908.)

1. BROKERS—RIGHT TO COMMISSIONS—ACTION—EVIDENCE—BURDEN OF PROOF.
   A broker who seeks to recover commissions for effecting a contract must prove what negotiations he had and that his efforts resulted in the making of the contract.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 104, 105.]

2. SAME—WEIGHT.
   Evidence *held* not to show that the efforts of a person suing for commissions for effecting a contract resulted in its procurement.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 116–120.]

Appeal from City Court of New York, Trial Term.

Action by Bert Cooper against Vesta Victoria Lawrence, known professionally as Vesta Victoria. From a judgment for plaintiff, and an order denying a motion to set aside the verdict and for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and GIEGERICH and GREENBAUM, JJ.

Henry J. Goldsmith, for appellant.

Dennis F. O'Brien (Charles Godlzier and Arthur Offner, of counsel), for respondent.

GREENBAUM, J. The plaintiff alleges in his complaint that in the month of February, 1907, he entered into an agreement with the defendant, an actress known by the stage name of Vesta Victoria, whereby he was to be employed as her general manager and was to render her such services as would result in her procuring engagements at a salary in excess of $1,500 per week, which she was then receiving, and that as compensation for his services he was to receive a sum equal to 5 per cent. of the increase of such salary during the remainder of the theatrical season of 1906–1907, and a sum equal to 5 per cent. of the total salary received by her during any engagement which she might procure during the theatrical season of 1907–1908, and that defendant "promised and agreed to pay such compensation at the end of each and every week of the engagements so procured by her." The complaint further alleges the rendition of services between the months of February and May, 1907; as a result of which the defendant procured an engagement of 10 weeks, for the remainder of the theatrical

season of 1906–1907, at a weekly increase of her salary of $1,000, and thereafter a further engagement during the theatrical season of 1907–1908, for a period of 33 weeks, at a weekly salary of $2,500, beginning about the 23d day of September, 1907. Plaintiff admits payment for alleged services rendered in procuring the increase of salary during the season of 1906–1907, and alleges that on or about the 23d day of September, 1907, defendant entered upon the performance of her engagement for 33 weeks, and up to the time of the commencement of this action has "rendered and performed thereunder for 10 weeks consecutively." Recovery is sought for 5 per cent. of the total amount of salary received for 10 weeks by defendant upon the second alleged engagement, to wit, 5 per cent. of $25,200, or $1,250. A verdict was rendered in behalf of plaintiff for the full amount of his claim.

From the allegations of the complaint and the proofs it is clear that the sole issue in the case was whether the plaintiff was the procuring cause of defendant's contract for a 33 weeks' engagement made with the firm of Klaw & Erlanger. No proper reason appears for clouding this issue with plaintiff's alleged claim arising out of the first of the two contracts described, except to the extent that the facts connected with the transaction might throw light on the one here litigated. The plaintiff was the only witness in his behalf. The proofs do not establish that plaintiff ever was engaged as defendant's manager, and a recovery could only be sustained upon the theory that defendant's increase of salary was brought about by the efforts of plaintiff. The claim is analogous to that of a broker's. It was therefore incumbent upon him to establish that he was the procuring cause of the agreement for a 33 weeks' engagement under which defendant was to secure a weekly salary of $2,500. Although the complaint alleges that defendant was to pay plaintiff "at the end of each and every week" of her engagement, plaintiff's proof is that she agreed to pay him "each week after she received her salary." The weekly compensation, according to plaintiff's own testimony, was conditioned upon defendant's receipt of her weekly salary.

The proof of plaintiff's services seems to consist almost entirely of statements on his part as to what he told the defendant he did respecting the procurement of the Klaw & Erlanger agreement; but there is an ominous silence as to what actually occurred between himself and Mr. Erlanger, or his agent, Mr. Morris. The mere fact that he told defendant that he negotiated with Mr. Erlanger, or his agent, is not proof of actual negotiations that he had; and his statement to defendant that Klaw & Erlanger would sign a contract is no proof that he procured the contract, and it is consistent with defendant's claim that she procured it. A broker, who seeks to recover commissions for effecting a contract, is obliged to show what he did. He should prove what negotiations he had, and that his efforts resulted in the making of the contract. Defendant denies that plaintiff was her agent. It is practically undisputed that he was not her manager, as he alleged in his complaint, and she denies that he procured the Klaw & Erlanger contract. It seems to be conceded that the payment of $500 made under the first alleged cause of action was a voluntary one on defendant's part, a circumstance somewhat inconsistent with plaintiff's claim.

It was incumbent for plaintiff to prove his case by satisfactory proof. It would have been sufficient, from a legal point of view, if he himself had detailed his negotiations with Mr. Erlanger, or his agent; or he might have produced Mr. Erlanger, or his agent, or both, to establish the facts. But he neither testified to the main facts nor produced either of these witnesses. It is true that defendant also failed to call either of these witnesses; the only testimony in the case being that of the respective parties. But the burden was upon the plaintiff, and I do not think that he fully sustained this burden. If plaintiff's case were one which depended upon inferences which might properly be drawn from the proofs given, because of inherent difficulties of establishing certain facts, it might be urged that a failure of justice might result if the jury were not permitted to indulge in inferences logically deducible from the proofs. But such is not this case. The plaintiff had it in his power to testify to the actual facts. He failed to do so. He did not even prove that defendant had received her weekly salary under the Klaw & Erlanger agreement. The issues were clouded by a mass of irrelevant testimony, and the plaintiff, by reason of the peculiar facts in the case, to wit, his failure to show that he was a manager, what he did in respect of the Klaw & Erlanger contract, the voluntary payment of $500, and the receipt by him of numerous presents from defendant, was entitled to a wider range of cross-examination, as to the relations between the parties, than was accorded her. It seems to me that the interests of justice will be subserved by a reversal of the judgment.

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.